May I please the court, I'm J. Arthur Smith III. I'm pleased to represent the appellants in this case. I've reserved five minutes for rebuttal. This is a 1983 action, as I'm sure the court is aware. The constitutional violation of the action is based on a violation of procedural due process under the 14th Amendment of the United States Constitution. One of the basic things in this case is Louisiana's Second Circuit Court of Appeal ruled in this case in a previous context that there was a due process violation that arose from the facts of this case. It was based on the lack of adequate notice in the charging instrument in which Mr. Webb went to trial on. He was charged with one violation of local ordinance on February 7, 2007, and he goes to trial to find out that he's really been charged with another 581 charges and added to the fine. That was a Louisiana state judge who decided he could get fined per day. I know these aren't squarely the issues before us, but I'm trying to figure out what the underlying constitutional violation is. All the time in our court, we say a district court messed up, gave a sentence that was too excessive, or violated this rule or that rule. You're saying that means you can go after the people who brought the case just because the judge imposes a sentence that's later found to be unlawful? No, I'm not saying anything nearly that broad. What is the constitutional violation? I know why the sentence got reduced, but what did the mayor, who you're suing basically, the mayor and the town do that was unconstitutional when they're just trying to enforce what a state court judge did? It was a violation of procedural due process to charge a man with one count on one day and then expand it in the judgment to 581 days. But the judge expanded it. Well, the judgment that was submitted to the court expanded it. And I think the Second Circuit held it was a violation of his procedural due process, and I think that's — that holding — But the judge's ruling was unlawful. Well, I understand that, but it was not — How are you getting to the mayor did something unlawful? The mayor authorized and initiated the litigation that resulted in this unconstitutional judgment and resulted in the interpretation, application, enforcement of that judgment by seizing this man's property. Going back to my original point, if a prosecutor authorizes and starts a prosecution that results in some judge giving a sentence beyond the statutory maximum, you think that prosecutor can later be sued? I mean, I know there's immunities and all that, but — Prosecutor can't be sued. He's absolutely fine. But forgetting the immunity, though, you think the prosecutor did commit a constitutional violation in that case? Well, it depends on the case, but I think in this case he did. I mean, it was a violation of due process. I mean, it's like, you know, going to court on one disorderly conduct trial and charging and finding out you really charged with $300 and you're facing a case of much more magnitude. I mean, it's a $58,200 fine for a misdemeanor? I know. My reading of the record is they gave him a ticket for one day. Right. And this state court judge says, I'm going to fine you $100 for all these days. I mean, I don't see how you're attributing that to this mayor. He's the one who initiated it. And the town attorney, he's the one who made the decision to interpret that ordinance in that fashion, go after Ivan Webb. And the town attorney who was acting as a delegated policymaker was the one who was in charge of all that. And, you know, that's my position. I think the Second Circuit ruling is clear. It's a violation of due process. And I think the mayor and the town attorneys had a causative active role in that violation. That's, you know . . . Let me ask you this. It wasn't just the mayor's court with some specially designated judge because of the mayor's conflict. You also had whatever the 6th Judicial District Court is, and that was a trial de novo, wasn't it, in front of there? And yet again, this amount was upheld. It took the more reflective reasoning of yet another court. So it seems to me regardless of the point that you're trying to make, qualified immunities would apply because it's awful hard to say that the law was clearly established, that this was a due process or any other constitutional violation, when two levels of court said the contrary. The basic rule in qualified immunity is every reasonable official. That probably is what you want to point to. Every reasonable official would realize they were violating the Constitution in this way. And we have two levels of judges who actually contributed to it. And, of course, they have absolute immunity. We don't gain clearly established status by the ruling of a district court. You don't gain what? I'm sorry. You don't gain clearly established law status by the ruling of a district court. Well, it's the opposite. These did not be clearly established. Well, I think it is. I mean, you take a guy as one charge, and then he goes to court and gets 581 charges, I think that's an obvious violation of the Constitution. Let me ask, is there just one ticket? I don't see an amount of fine in the exhibit I saw. And so is that, there is just the one ticket and it wasn't replaced by something else that shows the fine on the face of the ticket? Well, it shows the judgments show. No, the ticket doesn't show the fine. The ticket shows the one day of. There's a blank for it, but it wasn't filled in. So there's not another one that would have alerted whoever gets it what the amount of the fine is. No, it's not on the fine as far as I know. Just the date of the one-day violation. But, you know, on the qualified immunity issue, the mayor claims that this intentional seizure of Mr. Webb's property was a mistake. I think that's irrelevant to the qualified immunity claim because that's based on objective reasonableness. And what's in his mind, subjectively in his mind, whether it's a mistake or not, is irrelevant to objective reasonableness. I mean, this, I think, is a clear constitutional violation. All he's trying to do is enforce a judgment that a state court, two state courts, judges said was okay. So how is that a violation of clearly established law to go with? You're really just challenging him enforcing the judgment as I gather it. It's not reasonable to enforce a judgment that's certified with the court's seal. Maybe us judges have too high a view of other judges, but to me that's reasonable to rely on a state court judge. I'm sorry, Judge Costner, I have to disagree with you strongly. I mean, what is the purpose of notice? So how do you know when you can go enforce a judgment if the seal of the court isn't good enough? You can't reasonably rely on enforcing a court judgment? Well, I don't think you can go and take 100 percent of the man's wages without instituting a garnishment proceeding. Nobody ever said that. And that was the way after. That was a year after the Second Circuit had ruled, almost a year. And this is the whole process of this enforcement of this unconstitutional judgment. Well, I agree. I mean, it seems to me you have a little better case after the appellate ruling, but did your client ever send a letter at that point saying, look, you need to stop taking the money out because I won? I'm sure he did, but it's not in the record.  It's not in the record. A principal claim is liability of the town under Monell. The mayor is the final policymaker under the statute. The statutes are listed in the brief at page 24. He's a chief executive officer. He initiated the litigation. He made the policy decisions to go after Ivan Webb. And he is clearly a policymaker. We also say that the actions of the town attorneys were actions of delegated policymakers. The mayor's affidavit at pages 22, 23, and 24 of our original brief clearly showed that the town attorneys acted pursuant to delegation of authority from the mayor. The town attorneys were in charge of the prosecution. Two cases I think are very clearly controlling in this case. The Pembar case, Pembar v. City of Cincinnati, involves a county prosecutor, a one-time act. We have more than a one-time act here. We have a series of actions. And we do not have to show a custom and practice that one-time act is sufficient. The Burge case decided by this court in that case that no official policy had been promulgated, but the actions of the policymaker violated a constitutional right. That's exactly what we have here. And the actions of the town attorneys were certainly more than giving mere legal advice. The idea is two parts of this case, the judgment and then the enforcement of the judgment. I don't see how anyone can justify the enforcement of the judgment for a year after the Second Circuit has said it was invalid. I don't see any judgment. Was it a year or I thought it was three months after the Second Circuit ruling before the garnishment money was released? It was a year? This is the timeline. The mayor instituted, the mayor himself instituted the seizure on April 14, 2011. The Second Circuit decision was May 14, 2012. And it was, they continued to take 100% of his salary until February of 2013. Almost two years. Was there any reconsideration, any motion for rehearing at the Second Circuit? I think there was a motion for rehearing. I think it was an application to the Supreme Court. The Louisiana Supreme Court denied it. It would then become final until sometime after May, and I thought it was October before that became final. And so it was October, you know, it was a few months after October, I think, may be the relevant date. Argue why that would not be relevant if the city still was seeking to overturn. It might be, but first, when the Second Circuit comes out with its decision, I don't think it's reasonable to rely on the decision that's been reversed any longer. And taking 100% of a man's salary is totally illegal. Wasn't it really inaction, though, because they set up the payroll deduction. I mean, the way that usually works, you go in the computer and some clerk sets up a payroll deduction. So then this appellate decision comes out, your client wins, and just no one went in and changed it. I mean, you don't have any evidence of like an affirmative act saying we've got to keep taking his money, do you? The mayor wrote and said we're not going to pay you. We're not going to pay 100% of your salary. After the appellate ruling? No. After the appellate ruling, it seems to me it was just inaction. They didn't go in and stop the computerized deduction they already had. Do you have any evidence to the contrary, that they actually decided affirmatively after the . . . I don't have any evidence. I mean, taking a man's 100% salary to me is just . . . Well, he got it back. I'm sorry? He has it back. I'm sorry? He has the money back. Well, he got it back after two years, and he's working for two years without being paid. I also want to inform the Court, this Court made a previous decision in docket number 13-30667 in a previous matter in this case that sets forth the facts of this case pretty well. It was on a race judicata argument. But unless there are further questions, I'll reserve the rest of my time for rebuttal. All right, Mr. Smith. Thank you. Members of the Court, your Honor's first question was really sort of my first question, and this is well in my frustration with the case, because I saw this as a situation in which a litigant, in this case the town acting, was behaving like a litigant. There was a proceeding, there was a judgment, and then there was an appeal by a representative defendant, a district court judge sitting as the mayor's court ruled as he did. He, as your Honor had noticed, and this is in the record, both district court judges raised this question and invited input from Mr. Webb's attorney. And there's substantial discussions, they're cited in my brief, where first Judge Roberts and then Judge, I think it's Lancaster, raised this issue. In fact, the closing comments of Judge Roberts, I want you all to go back and look, especially Mr. Carson today,  and so from that first judgment, there was going to be $100 a day for this continuing period of time. Mr. Webb appeals, do the whole thing over, and the second judgment comes up with the same conclusion. I was a little concerned, because in the brief there's a suggestion that somehow there's something, and of course I'm the attorney that was the town attorney at the time, and there's a suggestion that something gets sort of snuck into the judgment and that Mr. Webb doesn't really know that he's going to be hit with this judgment as it comes out from Judge Lancaster, or that he wasn't given notice of the judgment as a specific allegation. There's no summary judgment evidence of that. They just say it in brief. I pointed, of course, to the judgment itself, which has a certification and indicates not just that it was sent to opposing counsel, but in fact quotes what opposing counsel said, that he disagrees with the judgment, but he's, you know, it's going forward. What does the record show as the first time it became an issue in the case that it would be $100 a day? That issue was discussed, and let's see. I'm looking at the transcript of the proceedings before Judge Roberts. That's the mayor's court. That's the mayor's court. And he, well, he said, he ruled, he said, I find that the statute further provides any person violating, et cetera, be fined $100 for each offense. Each day a violation is continued shall constitute a separate offense. And he goes on and says that I think although the original citation was issued on this date, I'm going to fine him from that date. Oh, excuse me. I'm quoting Judge Lancaster because they're so similar. Judge Roberts said the sanction is $100 a day, so I'm going to order that he pay whatever the statute calls for. That's $100 a day from February 14th until today. I think that they were worried, as you go on and read what Judge Roberts was saying, I think perhaps some of the concern was does the totality of the fine is too much. In other words, the mayor's court typically limited to $500. No one saw at that stage, best I can see, no one saw this issue about, oh, the charge is X and Y. Including, by the way, the district court, when the motion to annul was filed, that issue wasn't raised. You know, the court of appeals ultimately did not grant this as a motion to annul. They granted it as a motion to correct an illegal sentence. It's not a constitutional finding. They just said very clearly that the man was charged with one day's violation, and the sentence should have been for one day's violation, period. They do cite in there and mention in there that, of course, he's entitled to notice of what he was charged with. But the — Any charge other than the ticket, did something else get filed after the ticket before the mayor's court proceeding? I do not believe so, Your Honor. Not that I'm aware of. I think that there was the initial charge, and then there was a notice of some type that I think may have gone wrong. There was a letter sent a week later, but I don't know what other kind of notice. It just seems to me on the face of the ticket, you can't tell what the fine is. I don't quite see why it's considered a one-day versus continuing violation. That also doesn't seem clear from the ticket. I'm just wondering what else was explaining this. I mean, that could be just as much of a due process violation if you're not explaining any better what the violation is. But I was looking for other documentation, but it doesn't sound like there is any. There is — I've seen in the record, and I don't believe I have it here before me, but there is a sort of printed-out version that I think served as the notice for the mayor's court appearance. And that may have some additional information on it, Your Honor. I apologize for not being able to quote it to you, because I just don't remember what it said. But I do recall seeing it as I was preparing. Are you not the first lawyer up here who didn't remember everything? Well, let me try. I actually didn't handle the first proceeding. It was a different attorney. But the judge below found that there's — there was no allegation. There's no — where's the policy here, in other words? And if you look at the — as you look at the complaint, there's really no where in it that it indicates, all right, here's a municipal policy, and this was violated. And I — and, of course, it doesn't necessarily have to be an official written policy, but what's the policy here? The mayor — the only actors, the only people who are doing anything that I think of relevance is going to be the mayor. And although not really asserted as such in the complaint, as the case progresses, and certainly in the briefs before this Court, the town attorney. What's the mayor doing? The mayor's being a client. And his affidavit makes that very clear. There's a ticket. It's being handled by the town attorney. There's a judgment. The gentleman's attorney appeals. Trial de novo. Another full proceeding. It's a common-sense question of what in the world's going on here. You have a ticket to a man for $50, got a trailer out there, and you end up with this very large judgment against him. And it's a small town. This just has some local feud fight written all over it, and I don't know what — just tell me what's going on here. I mean, I do not believe that this was just some kind of oversight and that $100 a day suddenly got to be this huge judgment, and you're going through all this litigation for it. There's something else going on here. I don't know. Is it local politics? What is it? Well, Your Honor, I do know that — and, again, I wasn't there for the whole history of this, but I do know — But you know what was going on. My understanding is that the — and certainly what was discussed below, and I can't remember at what level, Mr. Webb had been — had requested permission to place these additional — he was trying to make his own trailer park, basically. He came to the town council or board of aldermen, excuse me, requested permission, was told no, and was told to move the trailers and basically just planted his feet and said, I'm not going to move them. I'm just not doing it. And so after a period of time, the town then said, well, if you're not going to move them, we're going to do this, and your final stop as soon as you move the trailers. And Mr. Webb just never would move the trailers. So time passes, and the judgment amount increases. I forget what the — the record certainly shows the amount of time that passed between the two trial proceedings, but — which was substantial, and, you know, the money — the number just keeps going up, as the judgment from Judge Roberts made clear, until such time as the trailer is removed from the lot. So I think that's — I think that from the town administration standpoint — and there was bad blood between the mayor and this gentleman, and that's why the mayor wasn't sitting as mayor's court. It's in the record. Kennedy. What do you mean bad blood? There was — there had been some sort of a confrontation, and I think a physical, you know — You had a fight? I think that — I think there was a — I think there was something like that, Judge. I'm glad you're getting to the chore here. Well, I wasn't involved in it, so I can't tell you. I just know that there was — You are involved in it now. You're the lawyer. I just want to know what's going on here. I mean, I know there was bad blood, and I know that was the basis for the recusal, and that — and quite frankly, from that point forward, the judges handled the mayor's court proceeding and rendered this judgment. The mayor, as he indicates in his affidavit, really took no other active role other than to tell the town attorney, do what you do, and so here comes a judgment. Now what do we do? I mean, this is not a judgment against some underrepresented person. Well, you realize, of course, that what you're arguing makes the attorney the policymaker. Well, Your Honor, perhaps. But policymaker in doing what? In what sense? I mean, the attorney is going to court — Well, in the sense that you're directing this, and because — and then you're — in the sense of Monell, that the city is now liable for — arguably for the conduct, whether that's — whether it's liability there or not, I don't know. But it's the conduct. The movement here is now the city and the municipality. Well, from the standpoint of the attorney, and it could be this attorney. It could be — I mean, we see it all the time in cases involving allegations against prosecutors, which is basically what the town attorney is doing here. He's a prosecutor. What's he doing? He's going to court. I'm not talking about the liability. I'm not talking about his personal liability. I'm talking about the liability of the city. Who made these decisions? And the answer to that is the city is. If it's the mayor who tells it to the city, he gives the basic policy choices to the attorney. So now you — so now the municipality is responsible for whatever — what came out of that. Yes, sir. And I guess my point is, though, that in a case like this, there's nothing — this is not one of these cases where there's some, you know, a conspiracy between the prosecutor and the sheriff to railroad some — I mean, there's no — all the lawyers are — to the extent this is policy, the policy is, here's this ticket. Just like you do a speeding ticket or anything else, go handle the ticket. And the ticket results in a judgment. The judge comes up with a judgment. The attorney, of course, crafts a judgment. But that ticket did not result in this judgment. You got a judgment, but that ticket did not authorize that fine. Well, Judge, and that's certainly what the Second Circuit ultimately ruled, and that ruling was — Well, and it's obvious that that's true. You can't take a $100 ticket and turn it like — and just sit on it and turn it. It was — I believe it was, and this is in the record, Your Honor, Judge Roberts' opinion, according to what's in the transcript, as he looked at it, he found — he interpreted it as being a violation, and he interpreted the penalty as being this amount per day based on this single violation. He did not — that judge — Despite the fact that the court had no jurisdiction to impose a fine in excess of that. He certainly — he certainly raised that issue, and he invited input, and neither Mr. Webb's attorney nor the town attorney — Well, the courts — well, the Louisiana courts ultimately said that that was beyond — that that court had — trial court had no jurisdiction beyond the face amount of that ticket. Correct, sir. They said that the charge was for a single day's violation, and that the fine could not exceed — So what we're left with is then a prosecution by someone authorized to act on behalf of the municipality that pursues a claim beyond the jurisdiction of the court and results in this very large money judgment. Yes, sir, and that — and I mean — Whatever that may be. To complete the circle isn't just hauling off and doing this. It's going before a court and accepting the judgment of the court and then preparing a judgment as directed by the court. I'm not suggesting otherwise. I'm just trying to get the — Yes, sir. And I mean, again, perhaps if Mr. Webb had perfected his appeal, maybe this would have gotten dealt with earlier. And I think it's also worth noting, as I indicated, it's not really just two district court judges that do it. It's the third one — it may be the same judge the second time on the call, but it's the third time when the motion to annul is filed and denied. So, I mean, this thing had a lot of judicial review with a represented defendant and a consistent ruling. Going back to the municipal liability question, in collecting the judgment, which it seems to me that's really more his complaint. Yes, sir. The collection and taking the money out of his alderman's wages and getting the land. I mean, I'm looking at the mayor's affidavit. He repeatedly says he delegated that — those decisions to you. Yes, sir. In other words, he did not — and that was consistent with his practice. I directed Koch to proceed with the collection efforts. Yes, sir. I allowed town attorneys to proceed in the manner they felt was best and relied upon their knowledge in this area, and there's more to that effect. Yes, sir. So why doesn't that make the town attorney, you, the policymaker, for the collection efforts? Well, because there's not a — the policy here is to just follow state law. He's relying on an attorney who is supposedly, I hope, knock on wood, is trained and knows how to try to collect a judgment and — But you're not disputing that you were delegated that authority. You're just saying it wasn't policymaking. I suggest, Your Honor, that's exactly correct. I mean, the authority of the town attorney is set by statute. And it's basically — and the statute is cited in my brief. It's basically to act as the attorney and represent the mayor. And there — of course, the mayor could have exercised whatever level of authority he wanted to. We never had decisions in this case that a client had to make. But it was a decision to be collected in this way. I mean, you don't — you know, there's different ways to collect a judgment. Sometimes you can say, oh, you know what, it's not worth it, it's this. I mean, those are decisions that get made. They are decisions. And so what was pursued was they did it with — there was a judgment debtor examination. There was a recognition that this gentleman was receiving money from the town, and the offset of that money was a lawful way to collect the judgment. And so they proceeded with offset. The — of course, the district court judge had ruled against the plaintiff on the motion to annul. There was a devaluative appeal of that judgment. And when the Supreme Court decision became final on the town's writ application, when the town's writ application was denied, then that's when the collection agreed should have stopped, and there was an error in oversight. And that's mentioned in the mayor's affidavit. And as soon as that was recognized and realized, then the money was all returned. And again — But what rises to the level of a policy? I mean, you're saying all these are decisions, but they're not policies. Where's that dividing line? Well, that's a good question, Judge. I mean, I think policy — I'll tell you, I'm sure people a lot smarter than me have read all these or tried to read all these cases and wondered the same thing. It is when the — I think when the town has to make an election about a specific way to proceed in a case, which election has the effect of depriving some of their constitutional rights. And so in this case, the town attorney has discretion to pick, should I do this, should I do that, but that discretion is not what makes him a policymaker. He's a policymaker if he's determining that from now on, we're going to collect, you know, municipal judgments in this way, A, B, and C. That would be a policy. Well, how about — A tactical choice if I do it in this case, I'm not so sure. But this money was collected after the state courts had ruled in this case. After the Second Circuit had ruled, and again, it was a divulative appeal, there's still no final judgment reversing the district court ruling. The town firmly believed, and I — After they ruled, the ruling you're relying upon, after you had that ruling, did you continue to collect money? How much did you collect? Judge, I could tell you, but it was — there was a certain amount per month. His salary was 500 a month. The actual amount that was collected was less than that because there were withholdings and things that had to be done. So he was credited with what was left after that amount. Judge, I don't have the precise figure to give you. I can tell you from the dates. The Second Circuit ruling was in June, I think. And so it was — and then it was in October. Excuse me. I beg your pardon. It was March 14th. We're hearing tonight April 5th. And then in October is when the money was tendered back. So that's May, June, July, or April, May, June, July, August, September. Seven months, Your Honor. And during that time — You've got seven months of continued enforcement of this judgment. And that's after a court has ruled against you. Well, yes, sir. But we firmly believed, and I still do, that the Court of Appeal ruling was incorrect. Okay. I understand what you're saying. But you've been relying upon that Court of Appeal. You rely on them now. Well, no. The Court of Appeal ruling was the ruling that found — Well, you had — okay, one Court of Appeal's ruling against you, and you still — just to get it factually, without characterizing it. Yes. After the state court had ruled against you — Yes. — you continued to collect for five, six, seven months, right? Yes, sir. Because under state law, that was not a final ruling, and the town was pursuing first an application for a rehearing and then an application to supervise — So that means it's not a mistake that you continue to collect this. Now, your deliberate decision to do so because you're — we're going to continue to fight this. That means — You're right, sir. No, what you're telling me, you deliberately were trying to collect this money. There's no oversight. The oversight was in the fact that when the Supreme Court denied the town's writ application — You still didn't go with it. — three months. So now that's an oversight, huh? That's the oversight. I'm not at all suggesting that the town's activity in collecting it, even following the Second Circuit ruling, that was no oversight. That was intentional. I mean, the town — All right. Then how much did you collect by oversight? Three months' worth. OK? So it was a — I think it's in the neighborhood of $1,000. You mean after all this fight, through two courts? It's bad that two people have been in a fight together, a physical fight, and then you add to the final court's ruling, you still have three more months, you're still taking a man's salary. Unfortunately, Your Honor, that was in — OK. But that was just an oversight. Well, it was, and I mean, there's no — But whose oversight was it? I mean, there is no summary judgment of it to the contrary. Well, I'm going to pressure you a little bit about it. There's a lawyer's oversight, there's a mayor's oversight. Whose?  We didn't — we were not — the attorneys were not involved in the mechanics of collecting the money. I accept that. But somebody had to do it. Clearly, and I don't — I can't answer that, and there's no evidence on the record about how that happened mechanically. But there's no liability for that, because it's — Well, I mean, Your Honor, I don't think there's — I don't think that there's 1983 liability for an error, and the only evidence on the record is that that was an error. So, I mean, to the extent that that's what the law is. So, I mean, the fact of the matter is that, regardless of the history, regardless of anything else, this is a — this is a situation where the town is relying on its attorney, the town's acting in a manner that's common of any litigant. The attorney is relying upon judgments from courts with jurisdiction. Nobody's trampling anybody's rights here. We have a representative defendant, and — who chooses not to appeal the judgment, and then comes back later out of time with this annulment motion. So I don't think that that's a — there's no constitutional violation there. If there is, then I think you have a constitutional violation every time there's a court that renders a sentence that exceeds the statutory limit or does any number of things. And so I suggest that the district court opinion was correct. Thank you. I have just a few points I think will possibly inform the court. Judge Higginbottom, at our reply brief at page two, it lays out in Mr. Webb's affidavit these people were bitter political enemies. They were prominent in the African-American community. Mr. Webb was a coach in a local team. When Webb gets elected to the Board of Aldermen, the first meeting is that the mayor has him arrested and thrown out of the meeting for all these reasons. And it's all — it's kind of laid out at page two of my reply brief. The Supreme Court, Louisiana Supreme Court, recused — recognized the conflict of interest and recused Brown from presiding in the mayor's court. Was he trying to preside and you had to move to have him recused? Was he refusing to recuse himself? I don't think there was any real controversy over it. I think it was fairly obvious he couldn't preside. I'm just wondering if the Supreme Court had to enter an order as opposed to him just doing it. So I'm wondering if he was trying to preside. Not relevant. Just keep going. Okay. Well, they had to appoint the new judge. The state Supreme Court has to appoint a judge. Yes. Judge Roberts. Yes. The policy here — keep in mind that these people are enforcing an ordinance all along. That is formal policy. That is established by the Board of Aldermen. That's what they're doing. It's obvious policy. There is smaller policy decisions, like in the Pinbar v. City of Cincinnati case. The policy was the prosecutor's decision, county prosecutor's decision, to authorize the door being knocked down in somebody's house. And that's what the Supreme Court said. A one-time violation is enough for a policy decision by a county prosecutor. They got back two pieces of real estate. And you got one up back, one lot, and the other one had been sold. What's the status of that? I'm sorry? What's the status of the separate property that had been sold? Well, you know, it's still — it's a loss of rentals, you know, loss of use of the property. We don't have any damage information in the record, because we'd move for partial summary judgment on liability, and there's no damage information in the record. Let me mention a couple of other things. The Ballard v. Wall case at page 13, cited in our original brief, deals with a situation where this court allowed a cause of action under 1983 for attorneys' actions when they went to the state district court judge and secured a bench warrant of some kind. And this court held that that was a cause of action under 1983. Counsel, it seems to me there that the judge was considered a co-conspirator with those who were basically using him to pursue a debtor's prison, whether he put people in jail until they paid what some creditor was owed. The judge had absolute immunity, but you still could have an action against the individuals. It seems to me that's a major distinction here. There's no suggestion that the county attorney, city attorney, and these two level judges were in cahoots with each other. There's anything illegitimate about the decisions and so forth being a conspiracy. I'm not aware of the start of the record, but the fact of the matter is that the actions of the town and the town attorneys were causative to the violation of these constitutional rights. And the reasonable belief, Your Honor, we talked about that earlier, the reasonable belief, if they had a reasonable belief in the accuracy of the lower court's decisions, that's irrelevant for Monell liability. A constitutional right was violated under the Second Circuit decision. That's collateral estoppel in this court. And whether they thought it was valid or not is irrelevant to Monell. It may be relevant to the qualified immunity matter, but it's not relevant to Monell. And basically what we have here, in our view, Your Honor, is a government overreaching, a government abusing its right to take people's property rights. And that's the fundamental essence of due process. And we believe, Your Honor, that there should be a reversal of the judgment below. All right. Thank you. Thank you both. An interesting case. I'll at least state that. That is the end of our docket for today.